UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JEFFERY T. CRYSTAL,
     Plaintiff,

vs.                            Case No.:  3:20cv5579/LAC/EMT

PORSCHE OF DESTIN, et al.,
     Defendants.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Jeffery T. Crystal (Crystal), an inmate of the Florida Department of Corrections (FDOC) proceeding pro se and in forma pauperis, commenced this case by filing a "Motion to Dismiss Criminal Proceedings and Conviction for Lack of Subject Matter Jurisdiction and Compel Arbitration Between Plaintiff and Porsche of Destin Pursuant [sic] Federal Arbitration Act (FAA), 9 U.S.C. 1 *et seq*." (ECF No. 1).  Presently before the court is Crystal's Second Amended Complaint brought pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 1981, 1983, 1985 (ECF No. 15).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b).  After careful consideration of the issues presented by Crystal, it is the

opinion of the undersigned that his claims should be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii) and § 1915A(b).

## I.    BACKGROUND

This case arose out of Crystal's conviction in the Circuit Court in and for Okaloosa County, Florida, Case No. 2013-CF-2963, of grand theft over $100,000.[1] Crystal names eighteen Defendants:  (1) Porsche of Destin; (2) Robert J. Graubman, Sales Manager of Porsche of Destin; (3) Unknown Owners of Porsche of Destin; (4) Brandon Joseph Myers, General Manager of Porsche of Destin; (5) Brian Rick Myers, Owner of Porsche of Destin; (6) Porsche Cars North America, Inc.; (7) Laurie Keller-Lithgow, a sergeant with the Okaloosa County Sheriff's Office (OCSO); (8) Wilton Mark Justiss, a deputy with the OCSO; (9) Stefan Vaughn, a detective with the OCSO; (10) B. Polson, a detective with the OCSO; (11) Okaloosa County Sheriff Larry R. Ashley; (12) OCSO; (13) Okaloosa County State Attorney's Office; (14) State Attorney William Eddins; (15) John Reed, Assistant State Attorney (ASA); (16) Stephen M. Bernhardt, ASA; (17) The Honorable William F. Stone, Judge for the Circuit Court in and for Okaloosa County, Florida; and (18) The

---

[1] On the same day that Crystal commenced this civil rights case, he commenced a federal habeas action challenging his state conviction under 28 U.S.C. § 2254.  *See Crystal v. Inch*, Case No. 3:20cv5565/LAC/MAF, Petition, ECF No. 1 (N.D. Fla. June 16, 2020).  The federal habeas action remains pending.

Honorable Patricia Grinsted, Judge for the Circuit Court in and for Okaloosa County, Florida (ECF No. 15 at 1–10).[2, 3]

In Claim One, Crystal claims that application of Florida's grand theft statute to his conduct violated the Contracts Clause and the Ex Post Facto Clause of the Constitution (ECF No. 15 at 25). In Claim Two, he claims that the Federal Arbitration Act, 9 U.S.C. § 4, supersedes Florida's grand theft statute and required the Private Party Defendants to arbitrate their dispute with him instead of reporting it to law enforcement (*id.* at 25–26). In Claims Three and Four, Crystal claims that Defendants interfered with his right to make and enforce contracts and conspired to obstruct justice and deprive him of his rights, in violation of 42 U.S.C. § 1981 and § 1985(2)–(3) (*id.* at 26). In Claim Five, Crystal brings a claim of "false arrest or false imprisonment," in violation of the Eighth Amendment (*id.* at 27).

As relief, Crystal seeks compensatory and punitive damages from the Private Party Defendants, OCSO Defendants, and the ASA Defendants (ECF No. 15 at 25, 27–28). He seeks unspecified injunctive relief from Judge Grinsted and Judge Stone

---

[2] The court refers to the page numbers automatically assigned by the court's electronic filing system.

[3] Hereinafter, the court refers to Defendants 1–6 as the Private Party Defendants, Defendants 7–12 as the OCSO Defendants, and Defendants 13–16 as the ASA Defendants.

(*id.* at 28).  Crystal also requests that the court compel the Private Party Defendants to arbitrate in the manner provided by the Retail Buyer's Order (RBO) he signed on June 30, 2011, a copy of which he attached to his initial pleading (*id.* at 28; *see also* ECF No. 1 at 20–21 (RBO)).

## II.    STATUTORY SCREENING STANDARD

Because Crystal is a prisoner proceeding in forma pauperis, the court must dismiss this case if the court determines it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).  The statutory language of these provisions "tracks the language of Federal Rule of Civil Procedure 12(b)(6)," therefore, dismissals for failure to state a claim are governed by the same standard as Rule 12(b)(6).  *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).  The allegations of the complaint are taken as true and construed in the light most favorable to the plaintiff.  *See Davis v. Monroe Cnty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997).  The court may consider documents attached to a complaint or incorporated into the complaint by reference, as well as matters of which a court may take judicial notice.  *See Tellabs, Inc. v. Makor Issues & Rights,*

*Ltd.*, 551 U.S. 308, 322 (2007); *Saunders v. Duke*, 766 F.3d 1262, 1272 (11th Cir. 2014).

To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation marks and citation omitted). And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are

conclusory and not entitled to be assumed true." *Id.* at 681 (quotation marks and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

III.    CRYSTAL'S FACTUAL ALLEGATIONS

The facts included in this section are taken from Crystal's Second Amended Complaint (ECF No. 15) and the attachments to his initial pleading (ECF No. 1 at 17–21, 26–34). The court also includes facts from Crystal's initial pleading (ECF No. 1) and his Amended Complaint (ECF No. 4), to the extent they clarify the facts alleged in the Second Amended Complaint.

On June 30, 2011, Crystal and Defendant Robert Graubman negotiated a contract (i.e., the RBO) for Crystal to purchase a new Porsche Panamera S vehicle for $109,588.74 in cash from Defendant Porsche of Destin (*see* ECF No. 15 at 13; ECF No. 1 at 20–21 (copy of RBO)). The RBO included an arbitration clause which stated, "The parties agree to submit all claims to binding arbitration as set forth in

paragraph H on the reverse side." (ECF No. 15 at 13–14; ECF No. 1 at 21 (RBO)).

Crystal alleges "paragraph H" included the following provision:

> H. Dealer and Customer agree that any controversy, claim, suit, demand, counterclaim, cross claim, or third party complaint arising out of, or relating to this Order or the parties' relationship (whether statutory or otherwise and irrespective of whether the Financing Approvals were obtained), including, but not limited to any matter that may have induced the Customer to enter into a relationship with Dealer (collectively referred to as "Claim"), as well as the validity of this provision, shall be submitted to final and binding arbitration in the county and state where Dealer is situated.

(ECF No. at 15 at 14).[4]

The same day Crystal signed the RBO, he wrote a check payable to Porsche of Destin in the amount of $109,588.74, and took possession of the vehicle (*see* ECF No. 15 at 18; ECF No. 4 at 23–24; ECF No. 1 at 26–27 (copy of check)). Crystal alleges he told Defendant Graubman that his bank account did not have sufficient funds to cover the check, but he would deposit sufficient funds within ten days (ECF No. 15 at 18–19). Crystal alleges Defendant Graubman agreed to delay deposit of Crystal's check, but Defendant Brian Myers deposited it the next day (*id.* at 19–20). Crystal alleges on July 6, 2011, his bank notified him that the check was "attempting

---

[4] Crystal alleges the arbitration provisions of the RBO were identical to the arbitration provisions of the RBO described in *Arrasola v. MGP Motor Holdings, LLC*, 172 So. 3d 508, 511–12 (Fla. 3d DCA 2015), a copy of which he also attached to his initial pleading (*see* ECF No. 1 at 3, 23–25).

to clear" his account (*id.* at 19). Crystal alleges he contacted Defendant Graubman, who told him that Brian Myers had made the decision to cash the check on July 1, 2011 (*id.* at 20). Crystal alleges Defendant Graubman requested that Crystal return the vehicle on July 7, 2011 (*id.* at 21). Crystal alleges he returned the vehicle on July 8, 2011 (*id.* at 20–21).

Crystal alleges Defendant Brandon Myers and Defendant Graubman signed sworn criminal statements with the OCSO, on July 13, 2011 and August 10, 2011, respectively, accusing Crystal of fraud (ECF No. 15 at 22; ECF No. 1 at 32 (copy of Graubman affidavit)). Crystal alleges Defendant Detective Polson and Defendant Deputy Justiss collected the affidavits and forwarded them to Defendant Detective Vaughn (ECF No. 15 at 23). Crystal alleges that on October 13, 2011, Detective Vaugh prepared a probable cause affidavit but omitted any reference the arbitration clause of the RBO (ECF No. 15 at 23; ECF No. 4 at 36–37). Crystal alleges Defendant Sergeant Keller-Lithgow approved Detective Vaughn's probable cause narrative (ECF No. 4 at 36). Crystal alleges the officers presented the probable cause affidavit to Judge Grinsted, and she issued a warrant for his arrest on October 13, 2011 (ECF No. 15 at 23; ECF No. 1 at 33 (copy of arrest warrant)).

Crystal alleges he was arrested on the warrant on November 3, 2011, while he was in Gwinnett County, Georgia (ECF No. 4 at 33).  He alleges on January 15, 2014, Defendant State Attorney Eddins and ASA Bernhardt charged him with one count of grand theft of over $100,000 and one count of issuing a worthless check for goods or things of value of $150 or more (ECF No. 15 at 24; ECF No. 4 at 34; ECF No. 1 at 34 (copy of information)).  Crystal alleges he was tried by a jury and convicted of the charges on October 6–7, 2014 (ECF No. 1 at 5, 44 (copy of Crystal's sworn state habeas petition); ECF No. 4 at 38).  Crystal claims Defendant ASA Bernhardt and Defendant ASA Reed failed to disclose the arbitration clause to the jury (ECF No. 4 at 38–39).  On December 8, 2014, Defendant Judge Stone dismissed the worthless check charge on double jeopardy grounds and sentenced Crystal to 360 months in state prison on the grand theft charge (*see* ECF No. 1 at 58 (copy of Judge Stone's order denying Crystal's state habeas petition)); *see also* ECF No. 15 at 27; ECF No. 4 at 38).  The Florida First District Court of Appeal affirmed Crystal's conviction and sentence for grand theft on October 20, 2015.  *Crystal v. State*, 174 So. 3d 997 (Fla. 1st DCA 2015) (Table).

Crystal alleges he presented his constitutional claims to the state circuit court in post-conviction motions and petitions, but Defendant Judge Stone denied relief

(ECF No. 4 at 39; ECF No. 1 at 40–56 (copy of state habeas petition), 58–63 (copy of order denying state habeas petition)).

## IV.   DISCUSSION

As noted *supra*, in Claim One, Crystal claims that application of Florida's grand theft statute to his conduct violated the Contracts Clause and the Ex Post Facto Clause (ECF No. 15 at 25).   In Claim Two, he claims that the Federal Arbitration Act, 9 U.S.C. § 4, supersedes Florida's grand theft statute and required the Private Party Defendants to arbitrate their dispute with him instead of reporting it to law enforcement (*id.* at 25–26).   In Claims Three and Four, Crystal claims that Defendants interfered with his right to make and enforce contracts and conspired to obstruct justice and deprive him of his rights, in violation of 42 U.S.C. § 1981 and § 1985(2)–(3) (*id.* at 26).   In Claim Five, Crystal claims he was falsely arrested or falsely imprisoned on the worthless check charge, in violation of the Eighth Amendment (*id.* at 27).   As relief, as mentioned *supra*, Crystal seeks compensatory and punitive damages from all Defendants except Judges Grinsted and Stone; he seeks unspecified injunctive relief from Judges Grinsted and Stone; and he requests that the court compel the Private Party Defendants to arbitrate in the manner provided by RBO (*id.* at 28).   (ECF No. 15 at 25, 27–28).

With respect to Crystal's claims against Judge Grinsted and Judge Stone, Crystal sues them in only their official capacities as state court judges and requests only unspecified injunctive relief (*see* ECF No. 15 at 9–10, 28).   Although the injunctive relief he seeks is unspecified, it is evident that Crystal seeks to invalidate his criminal prosecution and conviction and obtain release him from prison.   Habeas corpus, rather than § 1983, is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release.  *See Bradley v. Pryor*, 305 F.3d 1287, 1289 (11th Cir. 2002) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973)).   Therefore, Crystal's claims against the state court judges should be dismissed, pursuant to § 1915(e)(2)(B)(ii).

Crystal brings claims for monetary damages against the remaining Defendants under 42 U.S.C. §§ 1981, 1983, and 1985(2)–(3).   In order to recover damages for a conviction or imprisonment that allegedly violates the Constitution or federal law, or for other harm caused by allegedly unlawful actions which render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."   *Heck v.*

*Humphrey*, 512 U.S. 477, 486–87 (1994).   A claim for damages bearing that relationship to a conviction or sentence that has **not** been so invalidated is not cognizable under § 1983.  *Id.* at 487 (emphasis added).  Therefore, this court must consider whether a favorable judgment for Crystal would "necessarily imply the invalidity of his conviction or sentence . . . ."  *Id.*  "[I]f it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated" in one of the ways described above.  *Id.*  If the plaintiff cannot demonstrate the invalidity of his outstanding criminal judgment, then the Section 1983 action cannot proceed.  *See id.*

Here, a judgment in Crystal's favor—holding that prosecuting and convicting him for grand theft violated his constitutional rights under the Contracts Clause and the Ex Post Facto Clause, and that it was precluded by the Federal Arbitration Act— would necessarily imply the invalidity of Crystal's grand theft conviction. Therefore, Claims One and Two must be dismissed without prejudice as *Heck*-barred, pursuant to § 1915(e)(2)(B)(ii).

Even if Crystal's claims for monetary damages were not *Heck*-barred, however, they would still be subject to dismissal under § 1915(e)(2)(B)(ii)–(iii). Crystal's claims against ASA Reed and ASA Bernhardt in their individual capacities

are barred by the doctrine of prosecutorial immunity.  In *Imbler v. Pachtman*, 424 U.S. 409, 427–28 (1976), the Supreme Court held that traditional common law immunities for prosecutors, which derived from immunities recognized for judges, applied to civil cases brought under § 1983.  "[A] functional approach has evolved to determine whether executive branch public officials should be granted absolute immunity for taking particular actions, or whether they should enjoy instead only the qualified immunity normally afforded public officials." *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999).  Under this functional analysis, executive branch officials are entitled to absolute immunity for certain functions intimately associated with the judicial process. *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009).

Subsequent Supreme Court decisions established outer bounds on what activities qualify for prosecutorial immunity and to which individuals it applies. Prosecutorial immunity applies, for instance, to the prosecutor's actions in initiating a prosecution and presenting the State's case.  *See Imbler*, 424 U.S. at 431.  A prosecutor is immune for malicious prosecution.  *See Malley v. Briggs*, 475 U.S. 335, 342–43 (1986).  Prosecutors are immune for appearances before a court and conduct in the courtroom, including examining witnesses and presenting evidence

in support of a search warrant during a probable cause hearing.  *See Burns v. Reed*,

500 U.S. 478, 490–92 (1991); *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997).

Applying these principles, the Eleventh Circuit has emphasized that, "[a]

prosecutor enjoys absolute immunity from allegations stemming from the

prosecutor's function as advocate."  *Jones*, 174 F.3d at 1281.  Such absolute

immunity "extends to a prosecutor's acts undertaken in preparing for the initiation

of judicial proceedings or for trial, and which occur in the course of his role as an

advocate for the State."  *Id.* (quotation marks omitted); *accord Rowe v. City of Fort

Lauderdale*, 279 F.3d 1271, 1279 (11th Cir. 2002).  Prosecutors have absolute

immunity when "filing an information without investigation, filing charges without

jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing

exculpatory evidence, refusing to investigate . . . complaints about the prison system,

[and] threatening . . . further criminal prosecutions . . . ."  *Hart v. Hodges*, 587 F.3d

1288, 1295 (11th Cir. 2009) (quotation marks and citations omitted).

Here the conduct of the ASA Reed and ASA Bernhardt in initiating and

continuing the prosecution of criminal charges against Crystal concerned their

functions as advocates for the State.  Therefore, they are entitled to prosecutorial

immunity from Crystal's § 1983 claims against them in their individual capacities.

Crystal's also brings § 1983 claims against ASA Reed and ASA Bernhardt in their official capacities, and he brings official capacity claims against the State Attorney's Office and State Attorney Eddins (*see* ECF No. 15 at 7–9). The Eleventh Amendment is an absolute bar to suit for monetary damages by an individual against a state or its agencies, or against officers or employees of the state or its agencies in their official capacities. *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). Absent waiver or express congressional abrogation, neither of which is present in this case, the Eleventh Amendment bars Crystal's claims for monetary damages against the State Attorney's Office, State Attorney Eddins, and the ASAs for actions in their official capacities. Therefore, Crystal's claims against the ASA Defendants must be dismissed for seeking monetary relief against a defendant who is immune from such relief, pursuant to § 1915(e)(2)(B)(iii).

Crystal's allegations against the OCSO Defendants (the OCSO, Sheriff Ashley, Detective Polson, Detective Vaughn, Deputy Justiss, and Sergeant Keller-Lithgow) are subject to dismissal for failure to state a plausible claim on which relief may be granted, pursuant to § 1915(e)(2)(B)(ii). Crystal brings a "false arrest or false imprisonment" claim under § 1983 (*see* ECF No. 15 at 27). Crystal alleges Detective Polson and Deputy Justiss collected sworn complaints from two of the

Private Party Defendants (Brandon Myers and Robert Graubman) and forwarded them to Detective Vaughn, who then prepared a probable cause affidavit. Crystal alleges Sergeant Keller-Lithgow approved the probable cause affidavit, and it was submitted to Judge Grinsted. Crystal alleges the probable cause affidavit omitted any to reference the arbitration clause of the RBO. Judge Grinsted issued the arrest warrant on October 13, 2011, and Crystal was arrested on November 3, 2011.

A "claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests." *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) (citation omitted). Here, Judge Grinsted issued a warrant for Crystal's arrest on the charges (*see* ECF No. 1 at 33 (Warrant)). The issuance of the warrant extinguishes Crystal's false arrest claim and leaves only a claim for malicious prosecution. *Whiting v. Traylor*, 85 F.3d at 581, 585–86 (11th Cir. 1996) (citations omitted).

To maintain a claim of malicious prosecution, Crystal must overcome two hurdles. First, he must prove that he suffered a seizure pursuant to legal process that violated the Fourth Amendment. *See Williams v. Aguirre*, 965 F.3d 1147, 1157–59 (11th Cir. 2020). This burden requires him to "establish (1) that the legal process justifying his seizure was constitutionally infirm and (2) that his seizure would not

otherwise be justified without legal process." *Id.* at 1165. Second, Crystal must satisfy "the elements of the common law tort of malicious prosecution." *Id.* at 1157 (internal quotations marks and citation omitted). Under these elements, Crystal must prove that the officials instituted criminal process against him "with malice and without probable cause" and that the broader prosecution against him terminated in his favor. *Id.* (internal quotations marks and citation omitted).

Here, the prosecution on the grand theft charge did not terminate in Crystal's favor. Therefore, Crystal has not, and cannot, state a plausible malicious prosecution claim with respect to that charge.

With respect to the worthless check charge, the state criminal court dismissed that charge at sentencing on double jeopardy grounds. Even if this qualified as a favorable termination, Crystal's malicious prosecution claim is subject to dismissal as time-barred. The statute of limitations on a section 1983 claim that arose in Florida is four years. *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003) (citation omitted). The statute of limitations on a malicious prosecution claim begins to run once the underlying criminal proceedings have resolved in the plaintiff's favor. *See McDonough v. Smith*, 139 S. Ct. 2149, 2159 (2019); *Whiting*, 85 F.3d at 586 (citations omitted). Here, Judge Stone dismissed the worthless check charge on

December 8, 2014, but Crystal did not file his initial pleading in this case until June 11, 2020, more than four years after that date. Therefore, Crystal's malicious prosecution claim related to the worthless check charge must be dismissed with prejudice as time-barred.

This leaves Crystal's claims under § 1981 and § 1985(2)–(3). Section 1981 provides:

**(a) Statement of equal rights**

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**(b) "Make and enforce contracts" defined**

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

**(c) Protection against impairment**

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.

Subsections (2) and (3) of § 1985 provide an action for the recovery of damages against one or more conspirators who:

**(2) Obstructing justice; . . .**

. . . conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

**(3) Depriving persons of rights or privileges**

. . . conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws;

42 U.S.C. § 1985(2)–(3).

A plausible claim for relief under § 1981 or section 1985(2)–(3) requires a plaintiff to allege the existence of a racial, or perhaps otherwise class-based, invidiously discriminatory animus behind Defendants' alleged actions. *See Runyon v. McCrary*, 427 U.S. 160, 168, 174–75 (1976) (construing § 1981 to forbid all "racial" discrimination in the making of private as well as public contracts); *Kush v. Rutledge*, 460 U.S. 719, 724–25 (1983) (noting that both the "equal protection" part

of section 1985(2) and section 1985(3) contain "language requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws."); *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 829 (1983) (holding that a claim under § 1985(3) requires a showing of some "racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action"); *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (explaining—in the context of section 1985(3)—that the "language requiring intent to deprive of equal protection, or equal privileges or immunities, means that there must be some . . . invidiously discriminatory animus behind the conspirators' action."); *Childree v. UAP/GA AG CHEM, Inc.*, 92 F.3d 1140, 1147 (11th Cir. 1996).

Here, Crystal has not alleged, in any of his pleadings, any facts suggesting the existence of a racial, or perhaps otherwise class-based, invidiously discriminatory animus behind Defendants' alleged actions.    Therefore, Crystal's claims under § 1981 or § 1985(2)–(3) should be dismissed for failure to state a claim on which relief may be granted, pursuant to § 1915(e)(2)(b)(ii).

As a final matter, to the extent Crystal seeks to compel the Private Party Defendants to arbitrate, pursuant to 9 U.S.C. § 4, his request is patently frivolous and warrants no further discussion.

V.    CONCLUSION

Crystal's § 1983 claims asserted in Claims One, Two, and Five should be dismissed for failure to state a state a claim on which relief may be granted, pursuant to § 1915(e)(2)(B)(ii), and for seeking monetary relief against a defendant who is immune from such relief, pursuant to § 1915(e)(2)(B)(iii).  Crystal's § 1981 and § 1985 claims asserted in Claims Three and Four should be dismissed for failure to state a claim on which relief may be granted, pursuant to § 1915(e)(2)(b)(ii).

Accordingly, it respectfully **RECOMMENDED** that:

1.    Plaintiff's claims against Judge Grinsted and Judge Stone be **DISMISSED with prejudice** for failure to state a state a claim on which relief may be granted, pursuant to § 1915(e)(2)(B)(ii).

2.    Plaintiff's claims against the Okaloosa County State Attorney's Office, State Attorney William Eddins, Assistant State Attorney Reed, and Assistant State Attorney Bernhardt be **DISMISSED with prejudice** for seeking monetary relief against a defendant who is immune from such relief, pursuant to § 1915(e)(2)(B)(iii).

3.     Plaintiff's claims against the remaining Defendants be **DISMISSED** for failure to state a state a claim on which relief may be granted, pursuant to § 1915(e)(2)(B)(ii).

4.     The clerk of court be directed to enter judgment accordingly and close this case.

At Pensacola, Florida, this 7<u>th</u> day of April 2021.

<u>/s/ *Elizabeth M. Timothy*</u>
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**